IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

WILLIAM JOSEPH THEUS, JR.,
      Petitioner,

v.                          Case No.  1:08cv42/MP/CJK

EDWIN G. BUSS,[1]
      Respondent.

_____

ORDER and
<u>REPORT AND RECOMMENDATION</u>

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed a response, submitting relevant portions of the state court record.  (Docs. 15, 16).  Petitioner filed a reply.  (Doc. 17).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

BACKGROUND AND PROCEDURAL HISTORY

On September 11, 2003, a third amended information was filed against

---

[1]Edwin G. Buss succeeded Walter A. McNeil as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed. R. Civ. P. 25(d).

petitioner in the Circuit Court for Alachua County, Florida Case No. 02-CF-4492, charging him with four counts of lewd or lascivious battery on a child under 16 years of age, and four counts of lewd or lascivious molestation on a child 12 years of age or older but under 16.  (Doc. 16, Ex. A).[2]  Petitioner proceeded to trial.  Jury selection was held October 20, 2003.  (Ex. B).  After a one-day trial held on October 22, 2003, the jury found petitioner guilty as charged on all eight counts, making a special finding on the four lewd or lascivious battery counts that petitioner penetrated the victim's vagina.  (Exs. C, D).  Sentencing was held on November 6, 2003.  (Ex. E). The State informed the court that the lewd or lascivious molestation counts were alternative charges to the four lewd or lascivious battery counts (included in the event the jury elected not to find penetration), and requested that the molestation counts be set aside and petitioner sentenced on the four lewd or lascivious battery counts.  The court agreed, struck the four lewd or lascivious molestations counts, adjudged petitioner guilty of the lewd and lascivious battery counts in accordance with the verdict, and sentenced petitioner to concurrent terms of life imprisonment on each count.  (*Id*., pp. 4-5, 9).[3]  Judgment was entered accordingly.  (Ex. F).  The judgment was affirmed on direct appeal.  *Theus v. State*, 922 So.2d 391 (Fla. 1st DCA 2006) (copy at Ex. J).  Petitioner sought further review in the Florida Supreme Court by filing a notice to invoke that court's discretionary jurisdiction.  (Ex. L).  The Florida Supreme Court dismissed the case on June 26, 2006, because petitioner's notice was not timely filed.  *Theus v. State*, 935 So.2d 2 (Fla. 2006) (Table) (copy at Ex. M).  The

---

[2]Hereafter, all references to exhibits will be to those provided at Doc. 16, unless otherwise noted.

[3]The court found that petitioner was a habitual felony offender, but did not sentence him under that provision of Florida sentencing law.  (Ex. E, pp. 8, 10).

order of dismissal specified that review could be reinstated if petitioner established timeliness, but the docket reflects no further motions from petitioner.  (Exs. L, M).

On August 30, 2006, petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising seven grounds of ineffective assistance of trial counsel.  (Ex. N, pp. 1-44).  The trial court summarily denied all grounds without an evidentiary hearing.  (*Id*., pp. 45-79).  On September 21, 2007, the state appellate court affirmed the denial order without written opinion. *Theus v. State*, 968 So.2d 1022 (Fla. 1st DCA 2007) (Table ) (copy at Ex. P).  The mandate issued December 6, 2007.  (Ex. Q).

Petitioner filed the instant federal habeas petition on March 14, 2008.  (Doc. 1, p. 1).  Respondent concedes the petition is timely.  (Doc. 15, pp. 4-5).

## STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr*., 608

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737-38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme

Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  *Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See Gill v. Mecusker*,  633 F.3d 1272, 1287 (11th Cir. 2011) (citing *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  The federal court  determines what arguments or theories supported or could have supported the state court's decision, and then asks whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. at

786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court

decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 127 S. Ct. 2842, 2858. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

Within this framework, the court will review petitioner's claims.

ANALYSIS

Ground 1

Petitioner claims trial counsel was ineffective for failing to properly advise him during plea negotiations with the State. He provides the following information to support his claim:

> Petitioner was offered a plea offer by the State of Florida, for which, counsel conveyed. Said plea offer was a sentence of five (5) years incarceration in exchange for a plea of guilt by petitioner. Counsel advised Petitioner, he faced a sentence of thirty (30) years incarceration, (See: EXH. A), if he did not accept said plea offer. Counsel told Petitioner that based on the plea being offered at such time and the evidence in the case at hand, counsel felt that, he could prevail at trial and if Petitioner lost trial he would more than likely be sentence[d] to the actual statutory maximum for the crime charged, i.e., Fifteen (15) years incarceration.

Petitioner under counsel[']s advise [sic] opted to reject said plea offer with the understanding he was facing approximately a sentence of thirty years.

Subsequently, Petitioner proceeded and lost.  Upon sentencing Petitioner was sentenced pursuant to the Criminal Punishment scoresheet, that being, a life sentence on four (4) counts.

Petitioner submits that, counsel was ineffective in the advisement and/or conveyance of said plea offer to Petitioner.  At no time did counsel advise him that he could and/or would be sentenced by a criminal scoresheet or its guideline(s).  Nor did counsel advise Petitioner he was facing a life imprisonment sentence during conveyance of said plea offer.

(Doc. 1, p. 6A-6B).  In state court, petitioner provided the following additional details:

Prior to trial, counsel advised Defendant that, the State of Florida had offered Defendant, in exchange for a plea in the above styled case number, a plea of (5) five years incarceration to resolve said matters. Defendant asked counsel if this was an appropriate plea.  Counsel told Defendant that, there was no physical evidence in the above styled case number, except that of testimonial evidence which was not enough to substantiate a finding of guilt by the jury, therefore, unless the state was offering time served he was advising Defendant not to accept said plea offer and proceed to trial based on the lack of evidence in the state's case against Defendant.  And he felt that Defendant would prevail at trial and if Defendant lost he would only be facing a (15) fifteen year sentence.  Counsel told Defendant that he felt due to no physical exam being done and the situation between the victim and her mother as well as the victim promiscuousness right before alleging the crime against Defendant, Defendant would prevail since the state relied solely on testimonial evidence to substantiate the allegations against Defendant and no fact finder(s), i.e., the jury, would convict on such due to no physical evidence.  Defendant told counsel he would rely on his advice and not accept said plea offer of (5) five years incarceration and proceed

> to trial.  Subsequently, Defendant lost trial and received (4) four natural
> life sentences running concurrent.

(Ex. N, pp. 7-8).  In state court and here, petitioner asserts he would have accepted the alleged plea offer had counsel advised him his maximum prison exposure was a life sentence.  (*Id*., p. 6C).  Respondent concedes petitioner exhausted his state court remedies with respect to this claim by presenting it in the state postconviction proceeding.  (Doc. 15, p. 7 and Ex. N).

> A.    Clearly Established Federal Law

Ineffective assistance claims are governed by the United States Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  *Strickland* held that a successful claim of ineffective assistance requires a defendant to show both deficient performance by counsel and subsequent prejudice resulting from that deficiency   *Id*. at 687, 104 S.Ct. 2052.  "First, the defendant must show that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  "Second, the defendant must show that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*

The same two-part standard applies to ineffective assistance claims arising out of the plea process.  *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L. Ed. 2d 203 (1985); *see also Premo v. Moore*, — U.S. —, 131 S. Ct. 733, 737-38, 178 L. Ed. 2d 649 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain); *Padilla v. Kentucky*, — U.S. — 130 S. Ct. 1473, 1480–81, 176 L. Ed. 2d 284 (2010)

("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  To meet *Strickland*'s the prejudice prong in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.

"Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788.  As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

B.     Federal Review of State Court Decision

The state trial court correctly identified *Strickland* as the controlling legal standard.  (Ex. N, p. 46).  The state trial court assumed the truth of petitioner's allegation concerning the availability of a five-year plea offer (*id*.), and found that the record did not conclusively refute petitioner's contention that he was never told he could receive life imprisonment if found guilty at trial (*id*., p. 47).  Nonetheless, the state trial court denied relief on petitioner's claim without the benefit of an

evidentiary hearing, concluding that petitioner failed to establish prejudice because the record showed he was aware he faced "significant prison exposure" – far more than fifteen years in prison – if found guilty at trial (*id*., pp. 47-48).  The Florida First DCA summarily affirmed.  The state appellate court's affirmance warrants deference under AEDPA.

The Supreme Court has not addressed a claim precisely like petitioner's, nor has it ruled on a "materially indistinguishable" set of facts.  Therefore, the "contrary to" prong of the AEDPA standard is not implicated.  In reviewing the state court's decision under AEDPA's "unreasonable application" prong, the Court must decide whether there was any reasonable basis for the state court's decision.  *Cullen v. Pinholster*,  — U.S. ——, 131 S. Ct. 1388, 1402, 179 L. Ed. 2d 557 (2011); *Branch v. Sec'y, Fla. Dep't of Corr*. 638 F.3d 1353, 1354 (11th Cir.  2011).

The state appellate court reasonably could have concluded petitioner failed to surmount *Strickland*'s high bar.  The state trial court attached to its denial order an excerpt from the  transcript of a trial status conference held on June 12, 2003.  (Ex. N, p. 46).  The excerpt provides this information about plea negotiations:

> MR. MASON [Co-defense counsel]:  There was a plea offer of eight years.
>
> MR. COLAW [Prosecutor]:  A long time ago.
>
> MR. MASON:  I think the current number that was floating in the ether was about five years, and Mr. Theus was not accepting that.  He wants to go to trial.
>
> THE COURT:  I understand, but the situation is flexible at this moment. If he were to plead today, is there an offer?

MR. COLAW:  I don't really know, your Honor.  If he wants to come to me and take a significant chunk of something significant in DOC time followed by probation, then I would certainly consider, yes.  I'd consider resolving the case.

THE COURT:  Mr. Theus, your attorney is indicating that he does not think that he can adequately represent your case in trial.  In essence, he's asking, for health reasons, it be continued.

I don't know how critical it is for you to get resolution.  The choice I have is to try to work out a negotiation, plead the case.  I'll let you do that.  If you want to continue the case, I'll let you do that as well.  But it would have to be your choice.

THE DEFENDANT:  Going to trial.

(Ex. N, p. 58).  The eight-year plea offer referenced by the attorneys was an original offer the State made in December of 2002, shortly after the original information was filed charging petitioner with three counts of lewd or lascivious battery.  (Ex. N, Docket Sheet, p. 10 in ECF; Ex. G, p. 2).  The terms of the offer appear in a discovery exhibit filed with the state court on December 18, 2002:

Plea Offer:  PRE-DEPO:  (OFFER GOOD FOR 30 DAYS) - PLEA AS CHARGED, ADJUDICATED GUILTY, 8 YRS. DOC FOLLOWED BY 7 YRS. SEX OFFENDER PROBATION W/PSYCHO-SEXUAL TREATMENT, DNA DRAW, HIV/STD TESTS, NO CONTACT W/VICTIM, PAY RESTITUTION, CC, INVESTIGATIVE COSTS AS APPLICABLE.

NOTE:  DEFENDANT SCORES MINIMUM 23.7 YRS. DOC AS CHARGED.  DEFENDANT SCORES MINIMUM 9.1 YRS. DOC ON ONE COUNT OF LEWD OR LASCIVIOUS BATTERY.

(Ex. N, p. 60).  That offer was made prior to the State deposing the victim or any other witness, and it expired on January 17, 2003.  On February 6, 2003, the State

noticed depositions and notified petitioner of its intent to seek enhanced penalties under the habitual felony offender statute, including request for judicial notice of petitioner's convictions. (Ex. N, Docket Sheet, p. 11 in ECF; Ex. G, p. 2). On February 18, 2003, the State amended the information to add an additional count of lewd or lascivious battery and four counts of lewd or lascivious molestation. (*Id.*, Docket Sheet, p. 12 in ECF; Ex. G, p. 3). On February 26, 2003, the State notified petitioner of its intent to seek enhanced penalties under the PRR and habitual felony offender provisions. (*Id.*, Docket Sheet, p. 13 in ECF; Ex. G, p. 2).

Put in the proper context, the transcript of the June 12, 2003 status conference establishes that as of that date, only one plea offer had actually been made – the State's original offer outlined in its discovery exhibit: eight (8) years of imprisonment followed by seven (7) years of sex offender probation. The parties' statements at a later trial status conference (held one month before trial, on September 11, 2003) indicate that the State's original plea offer remained its only <u>actual</u> offer. At the September 11, 2003 status conference the trial judge asked defense counsel, "Was there a plea offer in Mr. Theus's case?" Defense counsel responded: "There was originally a plea offer. There are no plea offers at this time." (Ex. N, p. 63). At that point petitioner was given the opportunity to "plead straight to the Judge." He declined. (*Id.*, pp. 63-64).

As *Hill* instructs, when a petitioner claims ineffective assistance during the plea process, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S. Ct. at 370. The petitioner "'must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would

[not] have insisted on going to trial.'"  *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985)) (alterations in original).  Here, petitioner asserts he would have accepted a five-year plea deal if he had known he faced a possible life sentence.  But there is nothing in the record suggesting that a five-year plea offer ever actually existed.  According to the record, the only offer the State made was one involving eight (8) years of imprisonment followed by seven (7) years of sex offender probation.  Petitioner does not complain about counsel's advice with regard to that offer, and he has not alleged, in either the state court proceedings or this federal proceeding, that he would have accepted that offer.

Although defense counsel may have discussed the idea of a five-year plea deal with petitioner and "floated" it to the prosecutor for his reaction, the record demonstrates the prosecutor was not agreeable to it.  The prosecutor's exact words in reaction to a five-year deal were, "If he wants to . . . take a significant chunk of something significant in DOC time followed by probation, then I would certainly consider . . . resolving the case."  There is no evidence remotely suggesting that the prosecutor later reversed himself and offered petitioner five years in prison without probation.

In light of the foregoing, it would not have been unreasonable for the Florida First DCA to conclude that petitioner failed to establish there was a reasonable probability his case would have been resolved on a five-year plea deal absent counsel's alleged erroneous advice; therefore, petitioner failed to establish prejudice under *Strickland*.  *See, e.g., Richter*, 131 S. Ct. at 792 (identifying various bases upon which the state court reasonably could have concluded petitioner failed to establish

prejudice under *Strickland*, and holding that the state court's denial of relief was therefore not an unreasonable application of *Strickland*); *see also Gill*, 633 F.3d at 1288, 1292 (holding, in the context of a state appellate court's summary affirmance of a trial court's decision, that the focus of review under § 2254(d)(1) is "on the result, not on the reasoning that led to the result;" and that the federal habeas court "must consider whether the <u>outcome</u> of the state court proceeding[ ] permits a grant of habeas relief in th[e] case.") (emphasis added).

Petitioner has not shown that the state court's denial of relief on this claim was contrary to, or involved an unreasonable application of, *Strickland*.   Nor has petitioner shown that the state court's decision was premised on an unreasonable determination of the facts.  Therefore, he is not entitled to federal habeas relief on this claim.

<u>Ground 2</u>

Petitioner claims trial counsel was ineffective for failing to object, seek a curative instruction, or move for mistrial when prospective juror Patricia Gruver made "prejudicial statements" during voir dire.  (Doc. 1, p. 6E).  Respondent concedes petitioner exhausted his state court remedies with respect to this claim by presenting it in the state postconviction proceeding.  (Doc. 15, p. 11 and Ex. N).

A.    Clearly Established Federal Law

The clearly established federal law governing ineffective assistance claims is set forth above.

B.    Federal Review of State Court Decision

As with the previous claim, the state trial court correctly identified *Strickland* as the controlling legal standard.  (Ex. N, p. 46).  The trial court denied relief, finding

petitioner's claim "speculative and conclusory," and that petitioner failed to show an actually biased juror served on his jury. (Ex. N, pp. 48-49). The court also noted that petitioner was actively involved in the jury selection process and at the end of voir dire indicated he was satisfied with the jury as empaneled. (*Id*., p. 48 (citing Ex. B, p. 58)). The First DCA summarily affirmed.

The Supreme Court has not addressed a claim precisely like petitioner's, nor has it ruled on a "materially indistinguishable" set of facts. Therefore, the "contrary to" prong of the AEDPA standard is not implicated. To determine whether petitioner satisfies AEDPA's "unreasonable application" prong, this Court must determine whether there was a reasonable basis for the state court's decision. *Cullen, supra*; *Branch, supra*.

The state appellate court reasonably could have concluded petitioner failed to establish he was denied effective assistance of counsel with regard to Ms. Gruver's comments. During jury selection, the judge read the names of the parties, the witnesses and the attorneys, and asked if any prospective juror was acquainted with them. (Ex. B, p. 10). Ms. Gruver indicated she knew prosecution witness Ms. Barnes. (*Id*., p. 11). Later, the prosecutor inquired whether the nature of the charges would interfere with any prospective juror's ability to listen to the testimony and follow the law. The following exchange occurred:

> MS. GRUVER: My occupation as a nurse practitioner, I have worked with children for over 25 years, and as a child advocate and I have done private practice and public health, so I have been the expert in these trials on occasions, so I don't know that that background could be neutralized.
>
> MR. COLAW [prosecutor]: Okay. I appreciate the honesty. And you also mentioned that you're familiar with Miss Barnes?

MS. GRUVER:  Exactly, in a professional and private way.

MR. COLAW:  Okay.  Do you think that also, if you were to hear from Miss Barnes in perhaps an expert capacity, if you were a juror, do you think that could be a problem for you as well?

MS. GRUVER:  I don't understand.

MR. COLAW:  I think the question is, would you be able to judge her credibility as a witness just like anyone else, or do you know enough about her already that that could be a problem?

MS. GRUVER: I know enough about her.  She's definitely going to be credible.

(*Id.*, pp. 17-18).  The prosecutor then asked each of the other venire members whether he or she would be fair and impartial.  (*Id*., pp. 20-22).  Each responded unequivocally in the affirmative.  (*Id*., pp. 21-22).  Ms. Gruver was not selected as a juror.  The State struck her for cause, not because of her comment about Ms. Barnes, but because petitioner's counsel represented her son.  (*Id*., pp. 11-12, 59-60).

At the end of voir dire, the judge gave petitioner and his counsel an opportunity to discuss the venire panel and decide which members they wanted on the jury.  After conferring with counsel, petitioner acknowledged under oath:  (1) that he had an opportunity to talk to defense counsel about the composition of the jury, (2) that he heard the questions and answers during voir dire, (3) that he had a role in the selection of the jury, and (4) that there was no other information he wanted to know from defense counsel about the jury selection process. (Ex. B, p. 58).  Petitioner gave no indication he was concerned about the impact of Ms. Gruver's comment on the rest of the venire.  After the trial panel was selected, petitioner agreed that he knew which veniremen had been selected for the jury and that he concurred with that

selection.  (*Id*., p. 67).

Petitioner now contends Ms. Gruver's "expert like authority" coupled with her vouching for Ms. Barnes' credibility tainted the entire venire panel, and that trial counsel was ineffective when he failed to attempt to remove this taint by either objecting and seeking a curative instruction, or moving to strike the venire.  (Doc. 1, pp. 6F-6G).  With regard to prejudice, petitioner asserts, "It is conceived due to counsel's ineffectiveness in not objecting caused the prospective panel to have a preconceived notion that what ever Ms. Barnes says through her testimony must be refuted conclusively or they will find Petitioner guilty of the crimes charged if chosen to serve as a juror.  If not for this[,] the outcome of the proceedings would have been different and Petitioner would have the benefit of a bias free jury to weigh the evidence as it was received rather than on the authority of Ms. Gruver's expert-like belief."  (*Id*., p. 6G).

Effective assistance of counsel is required during the voir dire process.  *Brown v. Jones*, 255 F.3d 1273, 1278-9 (11th Cir. 2001); *Hughes v. United States*, 258 F.3d 453, 456 (6th Cir. 2001).  However, deference is to be given to counsel's actions during voir dire, as voir dire is recognized to involve considerations of strategy. *United States v. Boyd*, 86 F.3d 719, 723 (7th Cir. 1996) ("Decisions on selection of a jury are among the many entrusted to counsel rather than to defendants personally."); *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995).  A defendant claiming ineffective assistance of counsel during voir dire must show that counsel's actions were "so ill chosen that it permeates the entire trial with obvious unfairness."  *Teague*, 50 F.3d at 1172.  Further, because empaneled jurors are presumed impartial, *see Smith v. Phillips*, 455 U.S. 209, 215, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982), to satisfy

*Strickland*'s prejudice prong petitioner must show that the juror selection process produced a juror that was actually biased against him. *Hughes*, 258 F.3d at 458; *see also Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) (defendant's Sixth Amendment right to a fair and impartial jury not violated absent a showing that a juror hearing the case was actually biased against him).

Petitioner does not allege, and the record does not reflect, that any juror said or did anything suggesting he or she was improperly influenced to credit Ms. Barnes' testimony (notwithstanding defense counsel's cross-examination of her) and find petitioner guilty, on account of Ms. Gruver's statement. Petitioner asserts it is conceivable one or more members of the panel were improperly influenced, but *Strickland*'s prejudice prong requires more than a <u>conceivable</u> effect on the outcome of the trial. *Richter*, 131 S. Ct. at 792 (holding that under *Strickland*'s prejudice standard, "[t]he likelihood of a different result must be substantial, not just conceivable."). Absent some showing that there is a reasonable probability the outcome of the proceeding would have been different had a curative instruction been given or the venire replaced, it cannot be said that counsel's failure to request an instruction or new venire resulted in prejudice to the defense. Petitioner's conjecture is the type of speculative, conclusory allegation that is insufficient to meet *Strickland*'s high bar. The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application, of the *Strickland* standard. Nor was the state court's decision based on an unreasonable determination of the facts in light of the state court record. Therefore, this claim does not warrant federal habeas relief.

<u>Ground 3</u>

Petitioner claims trial counsel was ineffective for failing to "properly" object to Ms. Barnes' testimony referencing the opinion or findings of one Dr. Joyce Adams. Petitioner concedes trial counsel objected to the testimony on two grounds:  (1) that Ms. Barnes' testimony was hearsay because she was essentially presenting the predicate findings of Dr. Adams' study without the defense having the ability to cross-examine Adams, and (2) that Barnes was using the reference to Adams' study to bolster her own testimony.  (Doc. 1, p. 6H).  Petitioner contends counsel's argument was inadequate and that counsel should have made the additional (or alternative) argument that the State failed to establish Dr. Adams' unavailability. (Doc. 1, pp. 6H-6K).  Respondent concedes petitioner exhausted his state court remedies with respect to this claim by presenting it in the state postconviction proceeding.  (Doc. 15, p. 14 and Ex. N).

A.      Clearly Established Federal Law

The clearly established federal law governing ineffective assistance claims is set forth above.

B.      Federal Review of State Court Decision

The State called Ms. Marilyn Barnes as an expert in pediatrics and child sexual abuse.  (Ex. C, p. 176).  The testimony at issue is this:

Q      [Prosecutor] Ms. Barnes, based upon your expertise in pediatrics and child sexual abuse, how important in your mind is the actual physical examination?

A      Well, the literature says that it's relatively not important.  The history that the child gives us is the big thing.  The reason being that there are very, very rarely any findings in a child abuse sexual case.

Q      Are you actually familiar with studies concerning the ratio or the

percentage of times that there is documented findings when there's documented penetration or abuse?

A      Yes, there are numerous studies.  The last one that I am aware of was by Doctor Joyce Adams who's very well known in the field.

MR. EDWARDS [defense counsel]:  Judge, unless these studies are going to be produced for defense counsel to peruse, it amounts to hearsay.  I don't have a chance, without that study in my hand, to cross-examine Ms. Barnes on the findings and I would object.

THE COURT:  It entered into part of her decision in terms of going forward with the exam that has been a subject of a prior request, I'll allow it.  Though your point is well taken, but I will allow it in the circumstances of this case.

Q (*Mr. Colaw* [prosecutor] *continues*)   Ms. Barnes, is that something that you also have in the back of your mind is what the studies and the research has shown concerning child victims?

A      Certainly.

Q      Continue.  What is the research that you're aware of?

A      Well, Doctor Adams showed that only about 85 – excuse me.

MR. EDWARDS:  Your Honor, I'm going to object again.   I don't even know who Doctor Adams is.  I don't even know if Doctor Adams is a Ph.D., a medical doctor, that she's ever been qualified.

MR. COLAW:  Object to a speaking objection.  If Mr. Edwards wants to approach, I'll be glad to.

THE COURT:  Gentlemen, I appreciate all of that.  The question is this person made a professional decision and she is explaining the rationale and the reason behind them, those that are favorable to the

State and those that are favorable to the defense.  I have allowed this inquiry because the examination was a critical part in this case.  You may inquire.

Q (*Mr. Colaw continues*)  Go ahead, Ms. Barnes.  You may continue.

A     Doctor Adams is a medical doctor and her latest study shows that about 85 to 95 percent of all child abuse sexual victims have no findings, even when penetration was alleged and/or when it was seen, for instance some sexual abusers videotape their encounters and, anyway, it's very rare to have physical findings.

(Ex. C, pp. 179-81).

As with petitioner's previous ineffective assistance claims, the state trial court correctly identified *Strickland* as the controlling legal standard.  (Ex. N, p. 46).  The trial court denied relief, finding that defense counsel properly objected and preserved the issue for appellate review, as evidenced by the First DCA's opinion addressing the issue on direct appeal.  (Ex. N, p. 49 (citing *Theus v. State*, 922 So.2d 391 (Fla. 1st DCA 2006)).  Thus, the court concluded, the record conclusively showed defense counsel performed reasonably in challenging the testimony.  The court further found that the claim was procedurally barred, because petitioner was improperly attempting to re-litigate an issue raised and decided on appeal, by presenting it under the guise of an ineffective assistance of counsel claim.  (*Id.*).  The First DCA summarily affirmed.

The Supreme Court has not addressed a claim precisely like petitioner's, nor has it ruled on a "materially indistinguishable" set of facts.  Therefore, the "contrary to" prong of the AEDPA standard is not implicated.  Because the state appellate court reasonably could have concluded petitioner was not entitled to relief on this claim, petitioner is not entitled to federal habeas relief.

The trial transcript establishes that trial counsel objected to the testimony on hearsay and Confrontation Clause grounds.  Petitioner's appellate counsel sought review of the issue on direct appeal, arguing that the trial court erred in allowing Ms. Barnes to refer on direct examination to Dr. Adams' scientific article, because it was used, improperly, to bolster Barnes' direct testimony, in violation of Florida law.  (Ex. G).  The First DCA ruled, in relevant part:

> Appellant timely objected to Barnes' reference to the article, but the objection was denied.  The trial court erred.  *See Liberatore v. Kaufman*, 835 So.2d 404 (Fla. 4th DCA 2003)(holding that an expert cannot, on direct examination, bolster his testimony by testifying that a treatise agrees with his opinion).  However, in the context of this case, we hold the error is harmless.  *See State v. DiGuilio*, 491 So.2d 1129 (Fla.1986).

*Theus v. State*, 922 So.2d 391 (Fla. 1st DCA 2006) (copy at Ex. J).  In petitioner's state postconviction motion and here, petitioner claims counsel was ineffective for failing to argue that the testimony was inadmissible on the grounds that the State failed to show Dr. Adams was unavailable to testify.  Petitioner's claim ignores the fact that trial counsel made a meritorious objection to Barnes' testimony regarding Dr. Adams' article.  The state appellate court agreed with defense counsel that Barnes' testimony should not have been admitted.  The reason the evidence was admitted (and petitioner's conviction was not reversed) had nothing to do with counsel's conduct.  Further, as to prejudice, petitioner cannot establish a reasonable probability that the outcome of his trial or appeal would have been different had counsel objected on the grounds urged here.  Additional argument on the hearsay issue would not have changed the trial court's ruling, made admission of the evidence any more erroneous, or made the error any less harmless (i.e., more prejudicial).  The

Florida harmless error standard, as applied by the First DCA on direct appeal, "places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction."   *DiGuilio*, 491 So. 2d at 1135.   As the state postconviction court reasonably concluded, petitioner failed to establish that trial counsel performed deficiently, and that counsel's conduct prejudiced the defense.   The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application, of the *Strickland* standard.   Nor was the state court's decision based on an unreasonable determination of the facts in light of the state court record.   Therefore, this claim does not warrant federal habeas relief.

<u>Ground 4</u>

Petitioner claims trial counsel was ineffective for failing to file a pre-trial motion to dismiss the four lewd or lascivious molestation counts, on double jeopardy grounds.   Petitioner admits that the trial court set aside the four molestation counts, but argues that the mere fact the jury considered them violated his due process rights and the Double Jeopardy Clause.   Petitioner asserts that as a result of counsel's inaction, "prejudice ensued upon the sentence imposed on Petitioner in regards to the calculation(s) of points pursuant to the scoresheet." (Doc. 1, p. 6L-6M).   Respondent concedes petitioner exhausted his state court remedies with respect to this claim by presenting it in the state postconviction proceeding.   (Doc. 15, p. 16 and Ex. N).

A.      Clearly Established Federal Law

The clearly established federal law governing ineffective assistance claims is set forth above.

B.     Federal Review of State Court Decision

The state postconviction court correctly identified *Strickland* as the controlling legal standard, and denied relief on this claim, concluding that petitioner could not show prejudice because the record conclusively demonstrated:   (1) the four lewd or lascivious molestation counts were stricken before adjudication and sentencing, (2) petitioner was not convicted of those offenses, and (3) petitioner received no points on his sentencing scoresheet relating to the molestation counts.  (Ex. N, pp. 46, 49-50).  The state court record amply supports the state court's findings, (exs. E, F), and establishes that defense counsel had no plausible basis for filing a pre-trial motion to dismiss the molestation counts on double jeopardy grounds.

"The Double Jeopardy Clause of the Fifth Amendment prohibits the state from punishing a person twice for the same offense, *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225, 53 L. Ed. 2d 187 (1977), and a greater offense and a lesser included offense are considered the "same offense" for purposes of Double Jeopardy Clause protection."   *United States v. Kaiser*, 893 F.2d 1300, 1303 (11th Cir. 1990). Although the court may not enter separate <u>convictions</u> or impose <u>cumulative punishments</u> for both offenses (unless the legislature has authorized such punishment), *see Ohio v. Johnson*, 467 U.S. 493, 500, 104 S. Ct. 2536, 2541, 81 L. Ed. 2d 425 (1984), the Double Jeopardy Claus does <u>not</u> prohibit the government from <u>charging and prosecuting</u>, a defendant with both a greater and a lesser included offense at a single trial.  *Id.*   ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting [a defendant] for such multiple offenses in a single prosecution."); *Ball v. United States*, 470 U.S. 856, 861, 105 S.

Ct. 1668, 1673-74, 84 L. Ed. 2d 740 (1985) (holding that a previously convicted felon could be charged and prosecuted simultaneously for receiving and possessing the same firearm even though a single act established the receipt and possession, but that he may not suffer two convictions or sentences on that indictment; explaining, "If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses.").

The law is well established that counsel is not ineffective for failing to preserve or argue a meritless claim. *Freeman v. Attorney Gen., Fla.,* 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *see also Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore,* 240 F.3d 907 (11th Cir. 2001) (concluding that counsel was not ineffective for failing to raise a non-meritorious objection); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application, of the *Strickland* standard.  Nor was the state court's decision based on an unreasonable determination of the facts in light of the state court record.  Therefore, this claim does not warrant federal habeas relief.

<u>Ground 5</u>

Petitioner claims trial counsel was ineffective for failing to object to the testimony of Detective Nixon.  Specifically, petitioner alleges Detective Nixon

"presented h[er] opinionated beliefs on the demeanor of the victim's appearance as well as her Mother's" without being qualified as an expert to give that opinion.  (Doc. 1, pp. 6N-6O).  Respondent concedes petitioner exhausted his state court remedies with respect to this claim by presenting it in the state postconviction proceeding. (Doc. 15, p. 21 and Ex. N).

A.    Clearly Established Federal Law

The clearly established federal law governing ineffective assistance claims is set forth above.

B.    Federal Review of State Court Decision

The testimony at issue is this.   At trial, Detective Nixon described the demeanor of the victim and the victim's mother when she (Nixon) first contacted them during her investigation:

Q [Prosecutor]  And who do you first make contact with when you arrive?

A [Detective Nixon]  I contacted Lori Fields, who is the mom of [the victim].

Q  And can you describe her demeanor?

A  She was extremely upset when I started speaking with her in which she started to tell me about what was going on.

. . . .

Q  And can you describe for us [the victim]'s demeanor when you first made contact with her?

A  [The victim] was upset, very quiet, reserved, but clearly upset.

(Ex. F, pp. 151-52).  Petitioner argues Detective Nixon was not qualified as an expert

to give an opinion on the victim's and her mother's demeanor, so counsel should have objected.  The state postconviction court denied relief, concluding that counsel did not err in failing to object, because Nixon's testimony was admissible under state law.[5]

Petitioner's contention that the state court unreasonably applied *Strickland* obviously depends upon this Court determining that trial counsel's performance was deficient.  First, however, this Court would have to conclude that the state court misinterpreted state law when it held that the testimony constituted admissible lay witness testimony.  In *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338 (11th Cir. 2005) and *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005), the Eleventh Circuit was in a similar position.  In *Herring*, the petitioner argued his counsel was ineffective for failing to make an objection, based on state law, to the introduction of non-statutory aggravating evidence at the penalty phase of his trial.  *Id*. at 1354-55.  The Florida Supreme Court concluded that the proposed objection would have been overruled and therefore counsel was not deficient.  *Id*.  The Eleventh Circuit held:  "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . .  It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Id*. (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

---

[5]The trial court said:  "A lay witness may testify as to another person's demeanor, so long as they do not 'testify to the undisclosed intention or motive' of that person.  Shiver v. State, 564 So.2d 1158, 1160 (Fla. 1st DCA 1990) (citing Branch v. State, 96 Fla. 307, 317, 118 So. 13, 17 (Fla. 1928)).  There is no indication from Detective Nixon's testimony that she gave an opinion as to any 'undisclosed intention or motive' of either the victim or her mother." (Ex. N, p. 50).  The First DCA summarily affirmed.

Similarly, in *Callahan*, the petitioner contended his counsel was ineffective for failing to argue that, based on the Alabama state courts' interpretation of the Double Jeopardy Clause in three state court cases (*Hull v. State*, 607 So.2d 369 (Ala. Crim. App. 1992), *Ex parte Hergott*, 588 So.2d 911 (Ala. 1991), and  *Ex parte Callahan*, 471 So.2d 463 (Ala. 1985) (*Callahan I*)), the introduction of petitioner's statements at his second trial was precluded.  The Alabama Court of Criminal Appeals concluded that the petitioner's claim relied on an erroneous interpretation of state law and rejected it.  The Eleventh Circuit held:

> [T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on *Callahan I*, *Hull*, and *Hergott* – the objection would have been overruled.  *Callahan* [*v. State*], 767 So.2d [380,] 386-87 [(Ala. Crim. App. 1999)] (*Callahan III*). Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.
>
> Moreover, we are convinced [petitioner] could not satisfy the prejudice prong of *Strickland*. [Petitioner's] ability to demonstrate prejudice is again foreclosed by the state court's decision in *Callahan III*.  Even if [petitioner's counsel] was ineffective for failing to make the objection, the state court has told us that if he did make the objection it would not have been successful.  [Petitioner] cannot be prejudiced by his counsel's failure to make a losing objection.

427 F.3d at 932.

As in *Herring* and *Callahan*, the state court here has answered the question of what would have happened had petitioner's trial counsel objected to Nixon's testimony on the grounds petitioner proposes.  Counsel would have failed.  Therefore, counsel cannot be faulted for having failed to raise it.  And since counsel would have failed had he acted as petitioner demands, petitioner cannot show prejudice.

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application, of the *Strickland* standard.  Nor was the state court's decision based on an unreasonable determination of the facts in light of the state court record.  Therefore, this claim does not warrant federal habeas relief.

Ground 6

Petitioner claims trial counsel was ineffective for failing to object and seek a curative instruction during closing argument "[w]hen the State of Florida advised the jury that one of the element(s) of the crime [of lewd or lascivious battery] has been proven since the victim testified."  (Doc. 1, p. 6P).  Respondent concedes petitioner exhausted his state court remedies with respect to this claim by presenting it in the state postconviction proceeding.  (Doc. 15, p. 24 and Ex. N).

A.     Clearly Established Federal Law

The clearly established federal law governing ineffective assistance claims is set forth above.

B.     Federal Review of State Court Decision

To accurately assess the state court's decision, the prosecutor's alleged comment must be put in context.  During closing arguments, the State argued:

> The judge will tell you in a few moments that on the lewd or lascivious battery counts, that the State is going to be required to prove essentially two elements: [the victim] is under the age of 16 years.  And there's no dispute of that.  I don't think anyone is challenging that she was twelve years old at the time.  And you've heard a previous stipulation that's going to come into effect on the other counts as to the defendant's age being over 18. . . .  [A]nd that the defendant willfully engaged in sexual activity with [the victim] or encouraged, forced or enticed her to engage in any other act involving sexual activity.

> . . . .

> So a very essential issue for you all to determine as jurors today is do I believe what [the victim] told me today.
>
> If you believe what she told you, if you believe there was sexual activity and sexual contact in the manner she described and how she described it and when, then this has been proven.  That one element on each count, has been proven beyond a reasonable doubt.  If you don't believe her, if you don't believe what she said, then it hasn't.

(Ex. C, pp. 286, 289).  Petitioner contends counsel should have objected "and pointed out that just by the State stating a element has been proven since the victim testified prejudiced Petitioner by the jury believing the element of penetration and or molestation has been proven since the victim testified and the only element left to evaluate and determine is the victim's age.  Curative instructions were in order to ensure the jury did not conceive such notion."  (Doc. 1, p. 6Q).  The state postconviction court denied relief as follows:

> The State was arguing that the sexual activity had been proven beyond a reasonable doubt.  Id. at 289 (lines 12-18).  It is proper for the State to argue that an element has been proven beyond a reasonable doubt based on the evidence presented at trial.  Breedlove v. State, 413 So.2d 1, 8 (Fla. 1982).  Here, the State argued that if the jury believed the victim, then the sexual activity was proven beyond a reasonable doubt.  The State also argued that if the jury did not believe the victim, then it was not proven.  The other two elements (the victim's age and Defendant's age) were not at issue, which Defendant concedes in his motion.  The only element that both parties addressed during the trial, and most particularly in closing argument, was that sexual activity took place.  It is inconceivable that the jury thought this element had been proven and that they only needed to determine whether the victim was under 16 years of age.  This is further supported by the fact that the court instructed the jury that what the attorneys say is not evidence; and there were no questions from the jury which indicate confusion as to what they needed to consider to find Defendant guilty.  Counsel did not err in

failing to object to the State's argument.  This ground is without merit. (Ex. N, p. 51).  The First DCA summarily affirmed.

The Supreme Court has not addressed a claim precisely like petitioner's, nor has it ruled on a "materially indistinguishable" set of facts.  Therefore, the "contrary to" prong of the AEDPA standard is not implicated.  To determine whether petitioner satisfies AEDPA's "unreasonable application" prong, this Court must determine whether there was a reasonable basis for the state court's decision.  *Cullen, supra*; , *Branch v. Sec'y, Fla. Dep't of Corr., supra*.

Taking the prosecutor's comment on its face and in the context of the entire closing argument, the state appellate court reasonably could have concluded petitioner was not entitled to relief on this claim.  No rational reading of the prosecutor's argument supports petitioner's contention that the argument led the jury to believe that the "sexual activity" element had been proven because the victim testified and that the only element they were to consider was the age element which was undisputed.  Moreover, the trial court's final jury instructions clearly identified the jury's role and what they must decide.  As counsel cannot be deemed ineffective for failing to argue a meritless objection, the state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application, of the *Strickland* standard.  Nor was the state court's decision based on an unreasonable determination of the facts in light of the state court record.  Therefore, this claim does not warrant federal habeas relief.

Ground 7

Petitioner claims the trial court "erred and abused its discretion in allowing the State of Florida to elicit from its expert evidence of a sexual abuse study by another

expert." (Doc. 1, p. 12). This claim refers to witness Marilyn Barnes' discussion, during direct examination, of Dr. Joyce Adams' article/study. Petitioner argues that the admissibility of Barnes' testimony concerning Adams' article is governed by Section 90.706 of the Florida Evidence Code, which allows evidence of fact or opinion contained in published treatises, books, dissertations, or other writings to be used in cross-examination, but not on direct. Because Dr. Adams' article was referenced in Ms. Barnes' direct testimony, petitioner contends it was inadmissible under Florida law. Petitioner further argues that the study was used, improperly, to bolster Ms. Barnes' direct testimony, and was also use improperly in closing argument to bolster both Ms. Barnes' and the victim's credibility. Petitioner asserts that admission of the evidence constituted fundamental error under Florida law, and violated his rights under the Fifth, Sixth and Fourteenth Amendments. (Doc. 1, pp. 12-16).

Respondent asserts that to the extent petitioner challenges admission of the evidence on federal constitutional grounds, his claim is procedurally defaulted because he failed to present the issue as a federal constitutional claim in his direct appeal and cannot now return to state court to do so. To the extent petitioner challenges admission of the evidence on the same grounds he asserted on direct appeal, petitioner's claim is not cognizable on federal habeas review because it presents purely an issue of state law. (Doc. 15, pp. 26-28). Respondent is correct.

A.    Exhaustion and Procedural Default

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. §

2254(b)(1),[6] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.

In *Duncan v. Henry*, *supra*, the Supreme Court strictly construed the exhaustion requirement to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the

---

[6]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i)  there is an absence of available State corrective process; or

      (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

issue.[7]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S. Ct. at 888.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*  This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.  With regard to this statement, the Eleventh Circuit stated in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  *McNair* [*v. Campbell*], 315 F. Supp. 2d at 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d

---

[7]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

*Id.*, 416 F.3d at 1302-03 (citations omitted).[8]

The Eleventh Circuit, prior to *Duncan*, had broadly interpreted the "fair presentation" requirement.  However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach.  For example, in *Zeigler v. Crosby*, 345 F.3d 1300 (11th Cir. 2003) the Eleventh Circuit held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  *Id.* at 1307.  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that

---

[8]In his initial brief before the Court of Criminal Appeals, petitioner McNair cited one federal case in a string citation containing other state cases.  Also, in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, McNair stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005).  The Eleventh Circuit found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.*, 513 U.S. at 327.

Here, petitioner's direct appeal brief argued that Barnes' reference to the Adams study was inadmissible under Florida law. Petitioner's appellate counsel cited the Florida Evidence Code and principles of state law to support this argument. Petitioner's brief made no mention of the United States Constitution or federal due process principles, and cited no federal cases. The First DCA resolved the issue solely on state law grounds, holding:

> Appellant timely objected to Barnes' reference to the article, but the objection was denied. The trial court erred. *See Liberatore v. Kaufman*, 835 So.2d 404 (Fla. 4th DCA 2003)(holding that an expert cannot, on direct examination, bolster his testimony by testifying that a treatise agrees with his opinion). However, in the context of this case, we hold the error is harmless. *See State v. DiGuilio*, 491 So.2d 1129 (Fla.1986).

*Theus v. State*, 922 So.2d 391 (Fla. 1st DCA 2006) (copy at Ex. J)

The foregoing demonstrates that petitioner's presentation of the issue on direct appeal was based purely on state law grounds. That is how he presented it in his brief, and that is how the state court interpreted it. Petitioner failed to alert the state court to the federal nature of his claim. Because the issue can no longer be litigated under state procedural rules, *see Squires v. Dugger*, 564 So.2d 1074, 1077 (Fla. 1990) (holding that claim raised in state habeas petition was procedurally barred because it should have been raised on direct appeal), *and Owen v. State*, 773 So.2d 510, 515 and n. 11 (Fla. 2000) (holding that several claims raised in Rule 3.850 motion were procedurally barred because they could have and should have been raised on direct appeal), the claim is procedurally defaulted. Petitioner makes none of the requisite

showings to excuse his default; therefore, this Court will not review the claim.[9]

Ground 8

Petitioner claims the trial court erred in allowing Harold Hand to testify over objection to the out-of-court statements said to have been made to him by the victim about petitioner.  (Doc. 1, pp. 17-19).  At trial, during re-direct examination of state witness Harold Hand, the court allowed Hand to testify regarding comments the victim made to him about herself and petitioner.  (Ex. C, p. 251).  Defense counsel objected that the question sought to elicit inadmissible hearsay and exceeded the scope of cross-examination.  The State argued that the basis of the question went to Mr. Hand's state of mind when he entered a plea to charges of lewd or lascivious conduct (arising from his knowledge that petitioner and the victim were having sex and his allowing it to continue).  (*Id*., p. 252).  The trial court overruled defense counsel's objection.

In his federal habeas petition, petitioner relies on state law to argue that the testimony was inadmissible hearsay.  He contends the trial court's admission of the

_____

[9]To the extent petitioner claims the admission of Barnes' testimony violated state law, his claim is not cognizable on federal habeas review.  Federal habeas relief is available "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see also Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000) (stating that the writ of habeas corpus was not enacted to enforce state-created rights)*; Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").  Thus, federal habeas relief is not available where the claim is merely that an evidentiary ruling or jury instruction was incorrect under state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975)).

evidence was incorrect under state law, constituted an abuse of the trial court's discretion, was not harmless error, and that but for this error the outcome of his trial would have been different.  (Doc. 1, p. 19).  Respondent asserts this claim is not cognizable on federal habeas review, because petitioner fails to plead a federal constitutional violation; rather, he seeks habeas relief premised purely upon a state law issue.  (Doc. 15, pp. 29-30).  In the alternative, respondent asserts that if the Court construes the petition as pleading a federal claim, the claim is procedurally defaulted because petitioner's direct appeal brief did not alert the state court to the federal nature of the claim.  (*Id.*, p. 29).

Even liberally construing petitioner's habeas petition and reply, this claim for relief fails to plead a federal constitutional violation.  Petitioner seeks habeas relief premised upon state evidentiary error.  Such a claim is not cognizable on federal habeas review.  28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court <u>only</u> on the ground that he is in custody in violation of the constitution or laws or treaties of the United States.") (emphasis added); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citing 28 U.S.C. § 2241[10]; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975)); *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000) (stating that the writ of habeas corpus was not enacted to enforce state-created rights); *Carrizales v.*

---

[10]Section 2241 provides, in relevant part:  "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).

*Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").  Therefore, this Court will not consider it.

Ground 9

In his final ground for relief, petitioner claims the trial court violated his "constitutional right to a fair and impartial trial" when the court "commented on the sufficiency of the evidence which in turn related to the Petitioner not testifying or presenting evidence." (Doc. 1, p. 20).  The comment at issue is the following, which occurred after the State rested and after the defense advised the court outside the presence of the jury that it elected not to present any evidence:

> Folks, during the recess, the State announced that it rested the presentation of its case, that is they felt that they had presented a sufficiency of evidence and they elected not to present any additional evidence.
>
> Then I turned to the defense and gave them an opportunity if they wished also to be heard.  And they were satisfied as well that there was a sufficiency of information before you and they chose not to offer any additional information.  So we then concluded the evidentiary portion of this trial.

(Ex. C, p. 269).  Petitioner argues that the judge's comments altered the jury deliberation process, because the jury inferred that the evidence was sufficient to sustain the charges and that the defense concurred with that assessment.  (Doc. 1, p. 23).

Respondent asserts that to the extent petitioner argues the trial court's comment violated state law, his claim is not cognizable on federal habeas review.  To the extent petitioner presents a federal claim in this ground for relief, it is procedurally defaulted

because petitioner's direct appeal brief failed to alert the state court to the federal nature of his claim.  (Doc. 15, pp. 30-32).  Finally, the claim is without merit.  (*Id.*, p. 32).

A liberal construction of petitioner's habeas petition compels the conclusion that he has pled a federal due process violation.  The petition describes "Ground Nine" as "Trial court fundamentally erred in commenting on the sufficiency of the evidence . . . [t]hus, violating Petitioner's constitutional right to a fair and impartial trial." (Doc. 1, p. 20).  Petitioner's supporting argument cites the Sixth Amendment to the United States Constitution and four federal cases:

- *Irvin v. Dowd*, 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961), which is cited for the proposition that the right to jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."

- *United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979), which is cited for the proposition that "even if 'only one juror is unduly biased or prejudiced,' the defendant is denied his constitutional right to an impartial jury."

- *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), which is cited for the proposition that "[t]he existence of [structural] defects – deprivation of the right to counsel, for example – requires automatic reversal of the conviction because they infect the entire trial process."

- *Arizona v. Fuliminante*, 499 U.S. 279, 307-08, 111 S. Ct. 1246, 1264,113 L. Ed. 2d 302 (1991), which is cited for the proposition that a "'trial error' – error which occurred during a case's presentation to the trier of fact – may be quantitatively assessed in the context of other evidence presented in order to determine whether its admission is harmless beyond a reasonable doubt ."

The next question this Court must decide is whether petitioner "fairly presented" this federal claim to the state court in his direct appeal.

A.     Exhaustion and Procedural Default

This case is very similar to *Zeigler v. Crosby, supra*.  Petitioner's initial brief on direct appeal did not cite to the United States Constitution or any federal cases. (Ex. G, pp. iv-v).   As to the trial court's alleged comment on the sufficiency of the evidence, petitioner's brief to the state appellate court did not refer to the federal constitutional issue petitioner now raises in his federal habeas petition.  Rather, petitioner discussed Section 90.106 of the Florida Evidence Code (the statue governing judicial comments on the weight of the evidence, the credibility of the witnesses or the guilt of the accused), and state case law, which did not discuss the United States Constitution.  (*Id.*, pp. 42-44).  That section of petitioner's appellate brief which discussed the standard of review stated that because trial counsel failed to object to the comment, the comment could be reviewed only if the error was found to be fundamental, which required that it be "basic to the judicial decision under review and equivalent to a denial of due process."  (Ex. G, p. 41).  But this could be interpreted  as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause.  The same is true of the concluding sentence of petitioner's brief, which contained the words:  "The circumstances surrounding the comments, coming as they did from the trial judge, in the context of a trial where there was no physical evidence connecting Appellant and S.F. with any sexual activity and in light of the credibility problems surrounding S.F., raised the comments to the level of denial of due process and fundamental error requiring a new trial."  (Ex. G., pp. 45-56).  This, too, could be interpreted  as asserting a fair trial claim under the Florida Constitution

and Florida's Due Process Clause.  The only cases cited in petitioner's direct appeal brief discussing the trial judge's comment on the sufficiency of the evidence were state court cases that neither mentioned the United States Constitution nor cited federal cases.  (*Id*., pp. 42-44).  Petitioner never discussed the federal standards he now argues.  Thus, as in *Zeigler, supra*, and *McNair, supra*, the undersigned concludes that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted [here]." *Zeigler*, 345 F.3d at 1307-08.

Any further attempt at exhaustion in the Florida courts would be futile, because petitioner's claim would be procedurally barred under Florida law.  *See Squires v. Dugger, supra*; *Owen v. State, supra*.  Therefore, the claim is procedurally defaulted. As petitioner has made none of the requisite showings to excuse his default, this Court should not consider the claim.

B.     Merits

Even assuming to petitioner's benefit that he fairly presented his federal claim to the First DCA on direct appeal, the state court's decision finding the claim "without merit" (ex. J), is neither contrary to, nor an objectively unreasonable application of, clearly established Federal law.

Petitioner has pointed to no Supreme Court precedent holding that a state court judge's comment like the one made here violates the Constitution, and the undersigned has found none.  The Supreme Court has decided cases on the practice of judicial comment on the evidence, *e.g., Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L. Ed. 1321 (1933).  But such cases arise under the Supreme Court's supervisory power over federal courts; they set no clearly established constitutional

limits under AEDPA.  *See Early v. Packer*, 537 U.S. 3, 10, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).  None of the federal cases petitioner cites suggest that an isolated, unobjected-to judicial comment that might (but as easily might not) be construed as a comment on the evidence merits federal habeas relief.  As there is no clearly established Federal law on point, this Court cannot say that the requirements of 28 U.S.C. § 2254(d)(1) have been satisfied.

Even reviewing petitioner's claim under the broad principle that an alleged error of state law can violate due process if the error "so infused the trial with unfairness as to deny due process of law," *Estelle v. McGuire*, 502 U.S. at 75, 112 S. Ct. at 484, petitioner has not demonstrated an entitlement to federal habeas relief, because the isolated comment that might be construed as an improper comment on the evidence does not meet that standard.  To the extent the trial court erred, petitioner received a curative instruction.  The court's final jury instructions directed the jury that "deciding a verdict is exclusively your job and I cannot participate in that decision in any way.  Please disregard anything I may have said or done that makes you think I prefer one verdict over another." (Ex. C, p. 341).  In addition, the judge gave the standard final jury instructions on the presumption of petitioner's innocence, the burden of proof, reasonable doubt and the jury's obligation to follow the law. (*Id*., pp. 325-44).  In light of these instructions, any possible error created by the judge's earlier comment was cured.

## CONCLUSION

Petitioner is not entitled to federal habeas relief.  Therefore, his petition for writ of habeas corpus should be denied.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Edwin G. Buss has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. William Joseph Theus* in the Circuit Court for Alachua County, Florida, Case No. 02-CF-4492, be DENIED, and the clerk be directed to close the file.

2.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 25th day of August, 2011.

/s/ *Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).