IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

WILLIAM JOSEPH THEUS, JR.,
     Petitioner,

v.                      Case No.  1:08cv42/MP/CJK

KENNETH S. TUCKER,
     Respondent.

_____

## SECOND REPORT AND RECOMMENDATION

Chief District Judge Rodgers recommitted this matter to the undersigned for an evidentiary hearing on Ground One of petitioner's habeas corpus petition filed under 28 U.S.C. § 2254. (Doc. 31). After an evidentiary hearing and careful consideration of the issue raised in Ground One, the undersigned concludes that petitioner is not entitled to federal habeas relief, and that the petition is without merit and should be denied.

BACKGROUND AND PROCEDURAL HISTORY

On November 6, 2003, petitioner was convicted, upon jury verdict, of four counts of lewd or lascivious battery with penetration involving a child under the age of 16, in the Circuit Court for Alachua County, Florida. (Doc. 16, Exs. C, D, E, F). The charges arose from a sexual relationship between petitioner and the twelve-year-old daughter of a friend during the summer of 2002. Petitioner was sentenced to concurrent terms of life imprisonment on each count. (Doc. 16, Exs. E, F). Judgment

was entered accordingly. (Doc. 16, Ex. F). The judgment was affirmed on direct appeal. *Theus v. State*, 922 So.2d 391 (Fla. 1st DCA 2006) (copy at Doc. 16, Ex. J). Petitioner sought further review in the Florida Supreme Court by filing a notice to invoke that court's discretionary jurisdiction. (Doc. 16, Ex. L). The Florida Supreme Court dismissed the case on June 26, 2006, because petitioner's notice was not timely filed. *Theus v. State*, 935 So.2d 2 (Fla. 2006) (Table) (copy at Doc. 16, Ex. M). The order of dismissal specified that review could be reinstated if petitioner established timeliness, but the docket reflects no further motions from petitioner. (Doc. 16, Exs. L, M).

On August 30, 2006, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising seven grounds of ineffective assistance of trial counsel. (Doc. 16, Ex. N, pp. 1-44). The trial court summarily denied relief on all grounds without an evidentiary hearing. (*Id.*, pp. 45-79). The state appellate court affirmed without written opinion. *Theus v. State*, 968 So.2d 1022 (Fla. 1st DCA 2007) (Table ) (copy at Doc. 16, Ex. P). The mandate issued December 6, 2007. (Doc. 16, Ex. Q).

Petitioner filed the instant federal habeas petition on March 14, 2008. (Doc. 1, p. 1). Respondent answered. (Doc. 15). The case was transferred to the undersigned on July 11, 2011. (Doc. 26). The undersigned recommended that the petition be denied. (Doc. 27). By order issued February 17, 2012, Chief District Judge Rodgers accepted and incorporated by reference the recommendation as to all grounds except Ground One. Judge Rodgers rejected the recommendation as to Ground One and recommitted the matter to the undersigned with instructions to conduct an evidentiary hearing on Ground One. (Doc. 31). Respondent submitted additional portions of the state court record. (Docs. 44, 45, 51). The undersigned

appointed counsel to represent petitioner (doc. 39), and held an evidentiary hearing on June 25, 2012. (Docs. 54, 58). Counsel have submitted post-hearing memoranda. (Docs. 57, 62).

### GROUND ONE OF PETITIONER'S FEDERAL HABEAS PETITION

Ground One of petitioner's habeas petition claims that trial counsel was ineffective "in failing to properly advise Petitioner of all pertinent consequences he faced during plea negotiations(s) [sic] . . .". (Doc. 1, p. 6A). Petitioner's habeas petition alleges the following facts in support of this claim:

> Petitioner was offered a plea offer by the State of Florida, for which, counsel conveyed. Said plea offer was a sentence of five (5) years incarceration in exchange for a plea of guilt by petitioner. Counsel advised Petitioner, he faced a sentence of thirty (30) years incarceration, (See: EXH. A), if he did not accept said plea offer. Counsel told Petitioner that based on the plea being offered at such time and the evidence in the case at hand, counsel felt that, he could prevail at trial and if Petitioner lost trial he would more than likely be sentence[d] to the actual statutory maximum for the crime charged, i.e., Fifteen (15) years incarceration.

> Petitioner under counsel[']s advise [sic] opted to reject said plea offer with the understanding he was facing approximately a sentence of thirty years.

> Subsequently, Petitioner proceeded and lost. Upon sentencing Petitioner was sentenced pursuant to the Criminal Punishment scoresheet, that being, a life sentence on four (4) counts.

> Petitioner submits that, counsel was ineffective in the advisement and/or conveyance of said plea offer to Petitioner. At no time did counsel advise him that he could and/or would be sentenced by a criminal scoresheet or its guideline(s). Nor did counsel advise Petitioner he was facing a life imprisonment sentence during conveyance of said plea offer.

(Doc. 1, p. 6A-6B).  In state court, petitioner alleged the following additional details:

> Prior to trial, counsel advised Defendant that, the State of Florida had offered Defendant, in exchange for a plea in the above styled case number, a plea of (5) five years incarceration to resolve said matters.  Defendant asked counsel if this was an appropriate plea.  Counsel told Defendant that, there was no physical evidence in the above styled case number, except that of testimonial evidence which was not enough to substantiate a finding of guilt by the jury, therefore, unless the state was offering time served he was advising Defendant not to accept said plea offer and proceed to trial based on the lack of evidence in the state's case against Defendant.  And he felt that Defendant would prevail at trial and if Defendant lost he would only be facing a (15) fifteen year sentence.  Counsel told Defendant that he felt due to no physical exam being done and the situation between the victim and her mother as well as the victim promiscuousness right before alleging the crime against Defendant, Defendant would prevail since the state relied solely on testimonial evidence to substantiate the allegations against Defendant and no fact finder(s), i.e., the jury, would convict on such due to no physical evidence.  Defendant told counsel he would rely on his advice and not accept said plea offer of (5) five years incarceration and proceed to trial.  Subsequently, Defendant lost trial and received (4) four natural life sentences running concurrent.

(Doc. 16, Ex. N, pp. 7-8).  In state court and in his federal habeas petition, petitioner asserts he would have accepted the alleged plea offer had counsel advised him his maximum prison exposure was a life sentence. (Doc. 1, p. 6C).  Respondent concedes petitioner exhausted his state court remedies with respect to this claim by presenting it in his Rule 3.850 proceeding.  (Doc. 15, p. 7; *see also* Doc. 16, Ex. N).

SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death

Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[1] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See Gill v. Mecusker*,  633 F.3d 1272, 1287 (11th Cir. 2011) (citing *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask

whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

A federal court's review under § 2254(d) presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

A federal habeas court takes the final step of conducting an independent review of the merits of the petitioner's claims only if the court finds that the petitioner satisfied AEDPA and § 2254(d). *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## CLEARLY ESTABLISHED FEDERAL LAW

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (*citing Missouri v. Frye*, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), *and McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 132 S. Ct. at 1387. The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations. *Lafler*, 132 S. Ct. at 1384 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Frye*, 132 S. Ct. at 1404, 1409-10 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 48, 106 S.Ct. 366, 88 L. Ed. 2d 203 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel). *Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S., at 57, 106 S. Ct. 366 (*quoting Strickland*, 466 U.S. at 688, 104 S. Ct. 2052)). *Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on

whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S. Ct. 366.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, — U.S. —, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

## FEDERAL REVIEW OF STATE COURT DECISION

The state postconviction court correctly identified *Strickland* as the controlling legal standard. (Doc. 16, Ex. N, p. 46). The court assumed the truth of petitioner's allegation concerning the availability of a five-year plea offer (*id*.), and found that the record did not conclusively refute petitioner's contention that he was never told he could receive life imprisonment if found guilty after a trial (*id*., p. 47). Nonetheless, the state court summarily denied relief on petitioner's claim, concluding that petitioner failed to establish prejudice. The state postconviction court reasoned that because the record demonstrated that petitioner rejected the offer knowing he faced "significant prison exposure" – far more than fifteen years in prison – it is not

reasonably likely petitioner would have accepted the offer had he been told he faced life imprisonment. (*Id*., pp. 47-48). The Florida First DCA summarily affirmed without explanation.

District Judge Rodgers found, essentially, that the state court unreasonably applied *Strickland* because nothing in the state court record affirmatively contradicted petitioner's claim that he would have pled guilty had he known his full sentence exposure, and "the state court judge merely speculated that because petitioner knew he faced a lengthy minimum sentence and still went to trial, he would not have pled guilty even if he had known he faced a life sentence." (Doc. 31, p. 9). Judge Rodgers found that the fact that petitioner countered the State's written eight-year plea offer with an oral five-year plea offer provided some objective evidence of petitioner's willingness to enter into a plea agreement containing a sentencing deal similar to that which the State had offered, at a time when petitioner thought he was facing a possibility of 15 or 30 years. (*Id*., pp. 9-10). Judge Rodgers directed the undersigned to hold an evidentiary hearing "to allow petitioner the opportunity to develop the record regarding: (1) what he was told about his sentence exposure; and, (2) his pre-conviction willingness to plead guilty if he had known the true sentence he faced." (*Id*., p. 10). The undersigned construes District Judge Rodgers' order as concluding that the state court's adjudication of petitioner's claim is not entitled to the deference AEDPA otherwise requires, i.e., that petitioner satisfied the requirements of § 2254(d), and that this Court should review the claim independently considering additional evidence (evidence outside the state court record) adduced at evidentiary hearing.

## *DE NOVO* OR INDEPENDENT CONSIDERATION OF GROUND ONE IN LIGHT OF EVIDENCE ADDUCED AT EVIDENTIARY HEARING

<u>Findings of Fact</u>

Petitioner was born in September of 1968, was 34 years old at the time he was charged, and turned 35 years old a month before trial. (Doc. 16, Exs. A, F; *see also* Doc. 58, p. 76). The Assistant State Attorney who prosecuted petitioner's case was James Colaw. (Doc. 58, p. 84). Petitioner's defense counsel was Geoffrey Mason. (*Id.*, pp. 4-5). Mr. Colaw and Mr. Mason testified credibly that the State never made petitioner a plea offer involving five years incarceration. (*Id.*, pp. 16-17; *see also* petitioner's testimony at p. 63). Mr. Colaw testified credibly that "there was never a five-year offer from the State, nor was there ever a time in this case where a five-year offer would have ever even been considered." (*Id.*, p. 108). When Mr. Mason stated at a trial status conference that "the current number that was floating in the ether was about five years," (doc. 16, Ex. N, p. 58), Mason was referring to a number that he "was trying to get Mr. Colaw to agree to." (Doc. 58, p. 16). The State never made, and petitioner admits that Mr. Mason never conveyed to him, a prosecution plea offer of five years incarceration. (*Id.*, pp. 63, 96-97). Petitioner lied to the Court in his petition, and lied to the state court in his motion for postconviction relief, when he stated that the State made him a plea offer providing for a 5-year prison sentence in exchange for petitioner's guilty plea. (Doc. 1, p. 6A).

The only plea offer the State made to petitioner was an initial offer very early in the case, dated December 18, 2002 (hereinafter "initial offer"). (Doc. 58, pp. 32, 60, 63, 87). The State's initial offer provided that petitioner would plead guilty as charged (at that time petitioner was charged with three counts of lewd or lascivious

battery) in exchange for the State recommending a sentence of eight years in prison followed by seven years of sex offender probation.  (Doc. 58, p. 59, 87-88 (copy at Doc. 16, Ex. N, p. 60); *see also* Doc. 44, Ex. R, p. 8).  The State had not filed notice of any enhancements at the time the initial offer was made.  The initial offer "was intended to be a predeposition, prehearing offer.  It had a strict time limit on it of 30 days.  It was meant to get [the case] over with fast . . . for the victim, who was 12 at the time."  (Doc. 58, p. 88; Doc. 16, Ex. N, p. 60).  The benefits to the State were primarily to spare the victim from having to give a deposition; the benefits to the defendant were that the case would be limited to the three initial charges, as opposed to the "10 or 15" counts that could have been charged based on what the victim told law enforcement.  (Doc. 58, p. 88).

At the time petitioner was charged and throughout his case, a Florida defendant's minimum and maximum sentence exposure (without regard to enhancements) was calculated using the, then fairly recent, Criminal Punishment Code ("CPC") Scoresheet, similar to the one found at Doc. 16, Ex. N, pp. 65-66. (Doc. 58, pp. 134-35).  The defendant received points for various factors.  The factors relevant to petitioner's case were petitioner's primary offense, additional offenses, victim injury and petitioner's prior record.  The lowest permissible prison sentence, in months, was calculated by taking petitioner's total sentence points, reducing the total points by 28, then multiplying by 75%.  (*Id.*; *see also* Doc. 16, Ex. N, pp. 65-66). If the <u>total</u> sentence points (before that calculation) was greater than or equal to 363, a life sentence could be imposed.  (*Id.*).  Petitioner's lowest permissible prison sentence at the time of the State's initial offer was 23.7 years imprisonment if

convicted of all three counts after a trial. (Doc. 16, Ex. N, p. 60; Doc. 58, p. 35, 136, 141). Petitioner's lowest permissible sentence if convicted of just one count after a trial was 9.1 years in prison. (*Id*.). Petitioner's maximum sentence exposure at the time of the State's initial offer was life in prison, as petitioner's sentence points would have exceeded 363 had he been found guilty of committing three counts of lewd or lascivious battery involving sexual penetration of the victim. (Doc. 58, pp. 100, 117, 136, 141-42, 146).

Defense counsel Mr. Mason discussed with petitioner the State's initial plea offer. Mr. Mason did not advise petitioner that his maximum sentence exposure was a life sentence, because Mason did not know petitioner could get life. (*Id*., pp. 47, 146). Petitioner knew that his lowest permissible sentence was 23.7 years in prison, because that information was conveyed on the written plea offer petitioner reviewed. (*Id.*, p. 59; *see also* Doc. 16, Ex. N, p. 60). Mr. Mason explained to petitioner that sex offender probation in Florida was quite onerous. (*Id*., p. 12). Nonetheless, Mr. Mason "tremendously vigorously" encouraged petitioner to take the offer. (*Id*., p. 145; *see also* p. 27). Contrary to petitioner's testimony, Mr. Mason testified credibly that he never told petitioner that he had "a real good chance" of prevailing at trial. (*Id*., p. 145). Petitioner's position with regard to the State's offer was that he "believed that he should go forward because he was innocent, and that [the] eight-year offer was extraordinarily unfair." (*Id*., pp. 11-12; *see also* p, 28 (Mr. Mason's testimony that "eight was too much for Mr. Theus, followed by probation.")). Mr. Mason advised petitioner that if the State's initial offer expired or was rejected, the defense would have to make a counteroffer. Petitioner "was not interested in that

approach." (Doc. 58, p. 28). Petitioner was adamant that he wanted a trial. (*Id*., p. 36).

Petitioner testified at evidentiary hearing that he "didn't want to take the eight years . . . [b]ecause I didn't do the crime. I was not guilty of the charge" and because petitioner felt that eight years was a long sentence. (*Id*., p. 60). When petitioner was asked: "[W]as there much discussion with Mr. Mason about this eight-year offer, whether you would take it, or did you just say, uh-uh, I'm not going to take that?", petitioner responded, "I was pretty much trying to get the number of years to come down, even though I wasn't guilty of the charge. I would have been willing to plea out had it been a reasonable number of years." (*Id*., p. 61). Petitioner expressly rejected the State's offer. (*Id.*, p. 89).

After petitioner rejected the State's offer, the State filed an amended information in February of 2003, charging an additional count of lewd or lascivious battery and four counts of lewd or lascivious molestation. (Doc. 44, Ex. R, pp. 14-16; Doc. 58, p. 91). The lewd or lascivious molestation counts were included in the amended information in case the jury was inclined to a compromise verdict; lewd or lascivious battery and lewd or lascivious molestation are both second-degree felonies, but are weighted differently on the CPC Scoresheet. (Doc. 58, pp. 92-93). Just days after filing the amended information, the State filed notices of its intent to seek enhanced penalties. (Doc. 44, Ex. R, pp. 18-22). The amended information and notices of enhancements changed petitioner's minimum sentence exposure. Petitioner's lowest permissible sentence rose to approximately 30 years under the CPC. The possibility of a Prison Releasee Reoffender ("PRR") enhancement meant

that petitioner could be required to serve the first 15 years of any sentence day-for-day as a minimum mandatory. (Doc. 58, pp. 115-16, 134, 137, 139-40; *see also* Doc. 16, Ex. N, pp. 65-66). Petitioner's maximum sentence exposure remained a life sentence. (*Id*.). Mr. Mason advised petitioner erroneously that his maximum sentence exposure under the amended information and enhancements was 60 years imprisonment. (*Id*., pp. 18, 24, 46-47). Mason further advised petitioner that if he went to trial and was convicted, the judge would be required to sentence him to a minimum of 15 years, but would likely impose a sentence of 20, 30, or 40 years. (*Id*., pp. 18, 23, 24, 27, 36, 46). Mr. Mason did not tell petitioner he could get a life sentence if he went to trial and lost, because Mr. Mason "wasn't aware that . . . there was a statutory provision that allowed that to happen." (*Id*., pp. 47, 146).

Once petitioner rejected the State's initial offer, the offer of eight years imprisonment followed by seven years sex offender probation was never open again. (*Id.*, p. 89). Mr. Colaw explained:

> The only way we would ever come back to that or something different is if something seriously went south with the State's case. And in this situation, that didn't occur. I mean, other than with the multiple continuances, you know, I knew this was getting tough on the young girl and her family to be geared up, prepared for trial, and then it was continued. Aside from that, as the case went on, the case got better and better and better.
>
> . . . .
>
> There was never another offer from the State. I intimated on occasions, both on the record and off the record, to defense counsel that if they would bring me a defense offer that I would consider it. I would consider it; I'd have a conversation with my supervisor over the sex

crimes unit in Gainesville; and I would potentially, if it was something that was in the ballpark of being agreeable, then – and only then – would I have a sit-down conversation with the victim and her family about the advantages or disadvantages of accepting that or not accepting that. But I made it very clear to them that the only thing that would even be considered was significant double-digit time, and there was going to be a lengthy, in my mind at that point, double-digit sex offender probation to follow.

Q [Thomas Duffy, counsel for respondent]. By double digit, you mean something greater than 10? greater than 15?

A. I think what I was clearly intimating, in my mind to them, I don't know how they took it, was they had to get up around 15 or better in terms of years in prison, and I would then look at probably a decade, a 10-year sex offender probation to trail any sentence like that. Had they come to me with something like that, I would have had the conversation. We would have had a sit-down and had a discussion about whether it's worth it.

Now, the other thing I would say you got to keep in mind in that dynamic is I would have been more likely to have that conversation depending where we were at, timing in the case. As they went through the process of scheduling the victim's deposition and putting her through that process, I would have become less and less inclined. As we went through the process of being geared up for trial, and then coming in at the last minute to move to continue it one, two, three times, I mean, I would have gotten more and more to the point of being less inclined to have a conversation with them about resolving it short of trial.

(*Id*., pp. 89-91). There were four major factors that caused Mr. Colaw to believe his case was getting stronger. First, Mr. Colaw was able to get petitioner's co-defendant Harold Hand to enter a plea and thus was able to secure Mr. Hand's testimony, which supported the victim's account. Second, Colaw found a previously overlooked report

from the Child Protection Team, which enabled him to show that the victim reported the sexual batteries to others. Third, Mr. Colaw got petitioner to plead guilty to unrelated felony charges, giving petitioner a total of 14 felony convictions, which made it unlikely that petitioner would take the stand in his own defense and provided the State strong impeachment evidence if petitioner did take the stand. Fourth, the victim's ability to be an effective witness increased over time and she was very credible at her deposition. The foregoing factors caused Mr. Colaw to be even more resolute that he would not even consider additional plea negotiations unless they involved double-digit prison time followed by double-digit sex offender probation.

Defense counsel Mr. Mason continued to attempt to resolve the case on a plea agreement (*id.*, p. 16), and vigorously encouraged petitioner to re-consider accepting the State's initial offer (*id.*, p. 28) or to make a counteroffer that Colaw would accept. (*Id.*, p. 28, 42). Mr. Colaw repeatedly made it clear to Mr. Mason that he would not consider anything less than double-digit prison time and double-digit probation, and that Mason should not bring him a counteroffer for anything less. (*Id.*, pp. 110-113, 123). Petitioner remained firm that he wanted to go to trial (*id.*, p. 36), that he was not interested in making a counteroffer (*id.*, p. 28), and that he would be open to a plea agreement only if it involved no probation and less prison time than the State's initial offer. (*Id.*, p. 29; *see also* petitioner's testimony at pp. 68, 70-71). On April 27, 2003, petitioner wrote a letter to the trial judge asserting his innocence and complaining that Mr. Colaw was being unprofessional and heavy-handed. (Doc. 44, Ex. R, p. 100). After the June 2003 trial status conference at which Mr. Mason referenced five years "floating in the ether," Mr. Colaw asked Mason "Where are you

getting that?" (Doc. 58, p. 96). Mason responded to the effect that five years was the number he and his partner (Mr. Edwards) were hoping to get petitioner to agree to as a counteroffer. (*Id.*, pp. 96-97). Mr. Colaw testified, consistent with Mr. Mason's testimony, that defense counsel "never even got Mr. Theus to come with anything. There was never a defense proposal or defense offer put to [the State] in this case." (*Id.*). Mr. Mason did not make a counteroffer involving more prison time than the State's initial offer, because petitioner "was not interested in that", despite Mason advising petitioner that he could possibly get a sentence of 60 years served day-for-day if convicted after a trial. (*Id.*, pp. 18, 28).

Mr. Colaw was struck by petitioner's courtroom behavior during pretrial proceedings. (Doc. 58, pp. 85-86). Petitioner displayed arrogance and attempted to engage with Mr. Colaw, which was unusual for criminal defendants:

> A. [Mr. Colaw]. Mr. Theus is – I can count on less than one hand the number of criminal defendants I've prosecuted over 14 years who, you know, have actually engaged me or tried to engage me in, sort of, banter and back and forth, and those sorts fo things.
>
> Q [Mr. Duffy, respondent's counsel]. What sort of banter was that?
>
> A. Well, Mr. Theus, through most of the case – I mean, every time Mr. Theus would come out of the holding cell into the courtroom for court, I mean, he just had an air to him. He'd king of be looking at me and grinning and, you know, kind of strutting.
>
> And then we had an occasional – one time to actually have some banter back and forth when he was sitting with his attorney at counsel table.
>
> Q. And what was the nature of that banter, do you recall?

A.  Something along the lines, as I was walking by, they were talking, he said something like, "come on, Colaw.  You got nothing on me.  You can't – you can't win this."  You know, "I'm willing to do something.  Give me some time."

He wanted some – I don't think Mr. Theus wanted any probation, and he wanted a period of time – and this was late, in last stages of the case.  And I think at that point, he had come around to – he was willing to do some time if I would keep it as minimal as possible and run it concurrent with some time he was – had already received on some other charges he pled to, to which I basically said it isn't happening.

I mean, the same thing – told him the same thing that I told his attorneys throughout the process.  Everyone was trying to get this thing to move in the wrong direction.  You know, an offer had been rejected.  If they wanted to talk seriously about negotiating it, they needed to be moving in the other direction.

I told him it wasn't happening, to which he would continue, "Colaw, you got nothing.  You got nothing on me.  I didn't do this."  And I said, "We'll see when you're serving life."

Q.  So you told him he had the risk of a life sentence?

A.  Yes, but, you know, I will tell you this.  When I made that comment to him about, you know, "We'll see when you're serving life in prison," I have to tell you, you know, I don't know that I was thinking – you know, to be completely fair, I don't know that I was thinking natural life in prison as much as I was thinking – you know, I knew – I had discussion with his defense counsel.  I knew that they had told him that he had had exposure to 60 years, day for day.  I knew he was 33.  I mean, to me, him being in prison until 93 potentially or him getting life, they were one in the same to me.  They were sort of a distinction without a difference.

(*Id.*, pp. 85-87; *see also id.*, p. 126-127).  Although petitioner's courtroom conduct could be considered mere posturing, it is consistent with other evidence indicating: (1) that petitioner was unwilling to resolve his case on terms Colaw would accept even though petitioner knew he could spend the functional equivalent of life in prison, and (2) that although petitioner was willing to negotiate a plea, his willingness was not motivated by his maximum sentence exposure, but by other factors such as his assessment of the State's case and his desire to get a very short prison term with no probation.

The trial judge held a trial status conference on September 11, 2003, approximately one month before trial.  (Doc. 16, Ex. N, p. 63).  Petitioner was provided the opportunity to plead "straight up" to the judge, i.e., without a plea agreement with the State.  Petitioner was told, accurately, that if he pled "straight up" the minimum sentence the judge could impose was approximately thirty years imprisonment.  (Doc. 16, Ex. N, p. 63; Doc. 58, pp. 114-16, 124-25).[2]  Petitioner's maximum sentence exposure had he pled straight up as charged was still life in prison. (Doc. 58, p. 93).  Had petitioner indicated a desire to plead "straight up", Mr. Colaw would have insisted that petitioner's plea acknowledge penetration on each count, and would have argued to the judge that petitioner should be sentenced to life in prison.  (Doc. 58, pp. 93-94, 100-101).  Petitioner chose to go to trial, knowing that

---

[2]Petitioner's status as a Prison Releasee Reoffender required the sentencing judge to impose a mandatory minimum sentence of fifteen years in prison on each count of lewd or lascivious battery, to be served day-for-day. The judge <u>could</u> run the sentences concurrently, but he could not go below the lowest permissible prison sentence computed under the CPC Scoresheet which, for petitioner came to approximately 30 years (382.8 months) in prison.  (Doc. 58, pp. 114-116, 124-125; *see also* Doc. 16, Ex. N, pp. 65-66).

he could be in prison until he was 95 years old, if he lived that long. (Doc. 58, pp. 24, 74-75; *see also* Doc. 16, Ex. N, pp. 63-64).

Mr. Mason never gave Mr. Colaw a counteroffer, because petitioner had no interest in resolving the case with a plea to significant prison time and probation, which is what Mr. Colaw would have required. (*See* Doc. 58, pp. 18, 28, 110-111). Mr. Colaw's experience with Mr. Mason was that Mason attempted to avoid trials if possible and worked hard to settle his cases by plea. (*Id.*, pp. 97, 110). Mr. Colaw elaborated:

> Mr. Mason is conveying to me that Mr. Theus has no interest in resolving this for what I would – for the ballpark range that I'm looking for.
>
> And all I can tell you is at every court date, Mr. Theus made that same thing clear to the courtroom, to me, to everyone else when he would come out, that he wasn't interested in anything. He had a mantra that he was innocent, there was no proof of this. We – he was not going to be convicted, and he wanted his trial, absent something very small in time with no paper (sic) that could run concurrent with time he was already doing.

(*Id.*, p. 111).

The evidence demonstrates that although a number of factors weighed into petitioner's decision to go to trial instead of resolve his case on a plea, petitioner's maximum sentence exposure was not a factor of particular significance to petitioner. The primary factors which motivated petitioner to forego the State's offer and proceed to trial were (1) petitioner's consistently professed belief that he was innocent, (2) petitioner's belief that the State's case was weak, (3) petitioner's belief that the prosecutor was treating him unfairly and that he deserved a more favorable plea offer, (4) petitioner's desire to avoid sex offender probation, (5) petitioner's

belief that the more relevant consideration was not the maximum possible sentence but the estimated sentence (the sentence the judge would likely impose) and the lowest permissible sentence, and (6) petitioner's desire to not spend any additional time in prison than he was already serving on other convictions.

The undersigned does not find credible petitioner's assertion that he would have accepted the State's initial offer, or resolved his case on another plea deal, had he known he faced life in prison. Petitioner's false statements about a five-year plea offer demonstrate that petitioner has no qualms about lying under penalty of perjury.[3] Petitioner's evidentiary hearing testimony was inconsistent, belied by petitioner's own actions during plea negotiations and pretrial proceedings, and rebutted by abundant other evidence that is credible. Mr. Keith, petitioner's evidentiary hearing counsel, asked petitioner what he would have done had he known he faced a possible life sentence. Petitioner's response was conclusory and, when asked to explain it, became internally inconsistent and inconsistent with known facts in the record. Petitioner responded:

A. I would have taken the first plea that they offered had I known that.

Q [Thomas Keith, petitioner's counsel]. If you'd have known –

A. Honestly.

Q. The eight-year offer, you would have taken?

A. Yes, sir. Had I known I was facing life, yes, sir.

---

[3]The finding that petitioner lied in this assertion, *ante* at 13, is not made lightly. Any notion of the existence of a five year offer is completely refuted by the evidence, and by the chronological context–the State's case only got better after the very early, and only, offer of eight years.

Q.  Can you explain that?  You need to explain why you would have acted differently if you had known that you could have gotten life without release, without parole, as the worst case scenario by getting convicted at trial, why you would have acted differently?

A.  <u>Because I would have done far less time in prison</u>.

Q.  You were looking at a lot of time anyway, You knew 15, 20, 30 years?

A.  Yes, sir.  Based on the – I was –  relied solely on the information given to me by my attorney, and I figured I could, worst case scenario, maybe 30, but he said more leaning towards 15 or 20.

Q.  You didn't know you would get worse than 30?

A.  No, sir. No, sir.

Q.  Could be less?

A.  That was like a worst case scenario.  He thought he could give me a 15 years on one and a 15 years on another one, and maybe run them consecutive or something, something of that nature.  I don't really recall the exact conversation we had.

(Doc. 58, pp. 72-73) (emphasis added).  Petitioner testified that he "was willing to take t[he] chance" of going to prison for 15, 20, 30, or 40 years, by foregoing a plea deal and going to trial.  (*Id*., pp. 73, 74).  On cross-examination, however, petitioner back-pedaled and testified that when considering a plea versus trial, he was <u>not</u> willing to take the risk of being in prison for 30 years (until age 64) or 40 years.  (*Id*., pp. 75-76).  Petitioner further testified that he was <u>not</u> willing to take the chance of going to prison for 60 years (*id*., p. p. 74), but then acknowledged that he did take that risk.  (*Id*., pp. 74-75).  At a time when petitioner knew he could be sentenced to four consecutive 15-year terms (resulting in petitioner serving 60 years total), and when

counsel was advising petitioner (albeit erroneously) that he could still accept the State's initial offer, petitioner ignored that sentence exposure and chose to go to trial, because he was more focused on the lowest sentence the judge was required to impose (petitioner's perception of the "worst case scenario") and counsel's estimate of the sentence the judge would likely impose. (*Id.*, p. 73). Petitioner stated, essentially, that he did not think about his case in terms of his maximum sentence exposure. (*Id.*, p. 75).

When petitioner was asked at evidentiary hearing whether he recalled discussions early on about "worst case scenario" in the case, petitioner responded: "[Defense counsel] said if I went to trial and lost, I'd probably face anywhere from 15-20 years." (*Id.*). The 15-20 years, however, was counsel's strategic estimate of what petitioner would <u>likely</u> get, not counsel's advice as to the maximum possible sentence the law allowed. (*Id.*, p. 67 and Mr. Mason's testimony at p. 23). Petitioner later testified that counsel told him that he "could possibly be given 30 years or more. But his opinion if I lost trial, I'd be facing anywhere from 15 to 20 years. His opinion." (*Id.*, p. 63). Again, Mr. Mason testified credibly that he estimated petitioner's <u>likely</u> sentence as 30 years (after petitioner rejected the State's initial offer and was charged with additional counts and enhancements) and told petitioner in conjunction with that estimate that petitioner's maximum possible sentence was 60 years. (*Id.*, p. 27). Petitioner's testimony throughout the evidentiary hearing indicates that when considering a plea, petitioner equated his "worst case scenario" with counsel's strategic estimate of his <u>likely</u> sentence or the lowest permissible sentence, not counsel's advice as to the absolute maximum sentence the law allowed. Petitioner's equating his "worst case scenario" with his likely or lowest permissible sentence indicates that petitioner's overriding sentencing considerations in assessing

the benefits of a plea versus trial were the likely and lowest permissible sentences. Petitioner did not place particular emphasis on the maximum sentence the law allowed.

Even though petitioner may have been willing to resolve his case on a plea deal, he was not willing to resolve it on terms the State would accept. Petitioner's willingness to agree to Mr. Colaw's terms was neither enhanced nor diminished by petitioner's perception of his maximum sentence exposure. Even after petitioner was told he could spend 60 years in prison (until age 94 or 95), he still refused to authorize counsel to belatedly accept the State's initial offer or make a counteroffer upon terms the State might accept. Petitioner knew he could resolve his case if he made a counteroffer for a "substantial chunk" of DOC time followed by probation, but petitioner refused to authorize that counteroffer and insisted that any counteroffer be below the State's initial offer.

In sum, petitioner's maximum sentence exposure was not a motivating factor in petitioner's decision to forego a plea and go to trial.

Conclusions of Law

Petitioner's contention in state court and here that he was denied the right to effective assistance of counsel with regard to a five-year plea offer from the State, is conclusively rebutted by the record, because the undisputed testimony at the evidentiary hearing is that the State never offered, and petitioner never had an opportunity to resolve his case on, a five-year plea deal. Petitioner is not entitled to federal habeas relief on the specific claim raised in his petition.

Even if the Court broadly construes petitioner's claim as one that trial counsel was ineffective with regard to other plea offers, or during plea negotiations in general, petitioner is not entitled to federal habeas relief. Even assuming petitioner

established that defense counsel performed deficiently, *see United States v. Herrera*, 412 F. 3d 577, 581 (5th Cir. 2005) ("An attorney who underestimates his client's sentencing exposure by 27 months performs deficiently because he does not provide his client with the information needed to make an informed decision about accepting a plea offer or going to trial."), *see also, e.g., Ramirez v. United States*, 260 F. App'x 185, 187-88 (11th Cir. 2007) ("[I]f it is true that counsel advised, at the time [the defendant] was considering plea offers of five- and ten-year terms, that [the defendant] faced a maximum punishment of ten years when in actuality she faced a possible life sentence, such performance was constitutionally deficient."), petitioner must still show that counsel's error prejudiced the plea process. Logic would dictate that the required analysis of prejudice must be conducted independent of the court's conclusions as to the existence, or degree, of deficient performance. The law is in accord with such logic.

The authorities recognize that the maximum possible sentence is one of the essential facts of which a defendant must be aware in deciding whether to plead guilty. *See* Fed. R. Crim. P. 11(b)(1)(H) (requiring a court accepting a guilty or nolo contendere plea to first inform the defendant of the maximum possible penalty); *Hill v. Estelle*, 653 F.2d 202, 205 (5th Cir. 1981) ("Total ignorance of the outer limits of the penalty the defendant could suffer renders the [guilty] plea invalid under due process."); Fla. R. Crim. P. 3.172(c)(1) (requiring the trial judge accepting a guilty or nolo contendere plea to determine that the defendant understands the maximum possible penalty). It is perhaps tempting, then, to assume that counsel's misadvice as to petitioner's maximum possible sentence must have played an essential role in petitioner's decision not to accept the State's initial offer. Supreme Court precedent, however, does not allow for application of a per se rule of prejudice, or a presumption

of prejudice, to claims of ineffective assistance in the circumstances presented here. *See Hill*, 474 U.S. at 58-59; *Frye*, 132 S. Ct. at 1405-06, 1409-1410; *Lafler*, 132 S. Ct. at 1385. Petitioner must "affirmatively prove prejudice," *Strickland*, 466 U.S. at 693, by showing a reasonable probability that, but for counsel's error, he "would have accepted the offer to plead pursuant to the terms . . . proposed" and that "the plea would have been entered without the prosecution canceling it" *Frye* at 1409-10. In other words, petitioner must show a reasonable probability that he would have resolved his case on a plea resulting in a sentence of less than life, had he been properly advised of his maximum sentence exposure.

This is not a case where defense counsel failed to communicate a prosecution plea offer before it lapsed (as in *Frye, supra*), or where counsel advised petitioner to reject a prosecution plea offer (as in *Lafler, supra*). Counsel communicated the State's plea offer and "tremendously, vigorously" advised petitioner to <u>accept</u> it, but petitioner rejected it over counsel's advice. Petitioner nonetheless argues that counsel's performance prejudiced him, because counsel's deficient advice concerning petitioner's maximum sentence exposure led to petitioner's improvident rejection of the plea offer. *Frye* and *Lafler* are instructive to the extent they amplify what a defendant must show to establish *Strickland*'s prejudice requirement in the context of a missed or rejected plea opportunity. The Supreme Court in *Lafler* explained that where a defendant claims counsel's ineffective advice led to rejection of a plea offer, the defendant must show:

> that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have

been less severe than under the judgment and sentence that in fact were imposed.

*Id*. at 1385. The Supreme Court in *Frye* offered this guidance in evaluating *Strickland*'s prejudice prong:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.
>
> . . . .
>
> In order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it . . . there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. This further showing is of particular importance because a defendant has no right to be offered a plea.

*Frye*, 132 S. Ct. at 1409, 1410 (citation omitted). Here, petitioner must show that there is a reasonable probability that, but for the deficient advice of counsel as to his maximum sentence exposure, he would have accepted the State's initial offer or secured another plea deal resulting in less prison time. Evaluation of the prejudice prong in this case requires factual findings by the federal habeas court, based upon evidence adduced at the evidentiary hearing, and not upon supposition.

Petitioner has not shown a reasonable probability that he would resolved his case on a five year plea deal had he known his maximum sentence exposure was a life sentence. A five year plea deal was never available to petitioner.

Petitioner has not shown a reasonable probability that he would have resolved his case on the State's initial offer (eight years in prison followed by seven years of sex offender probation) had he known his maximum sentence exposure was a life sentence. The offer was made at the very beginning of the case, required acceptance before any discovery was conducted (including deposition of the victim), and was open for only a short period of time. Petitioner was offended by that offer and expressly rejected it based on factors other than his maximum sentence exposure – factors that weighed far more heavily on petitioner's decision. *See* discussion *supra*, pp. 23-24. Once petitioner rejected the State's initial offer, that offer was never available again.

Petitioner has not shown a reasonable probability that he would have resolved his case on a plea agreement for a term of years had he known he could get life, as opposed to 60 years, in prison. The State never made another offer after petitioner rejected its initial offer. Petitioner never authorized, and defense counsel never made, a counteroffer for a term of years. The prosecutor made it clear that he would not even consider a counteroffer unless it provided for double-digit prison time followed by double-digit sex offender probation. Petitioner refused to authorize counsel to extend any offer unless it provided for <u>less</u> prison time than the State's initial offer. Petitioner's position was influenced not by his maximum sentence exposure, but by other factors – those enumerated above. *See* discussion *supra* pp. 23-24.

Finally, petitioner has not shown a reasonable probability that he would have entered an open plea (i.e., pled "straight up" to the judge as charged without a plea

agreement) had he known he could get life, as opposed to 60 years, in prison. Nor has petitioner shown a reasonable probability that he would have received a sentence of less than life in prison had he entered an open plea.

Petitioner has not surmounted *Strickland*'s high bar and is not entitled to federal habeas relief on the ineffective assistance claim raised in Ground One of his petition.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this second report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. William Joseph Theus* in the Circuit Court for Alachua County, Florida, Case No. 02-CF-4492, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 31st  day of October, 2012.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).